IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAN W. ROEDER | : | |
| 8 Kline Road | : | Civil Action-Law |
| Orangeville, PA 17859, | : | |
| | : | JURY TRIAL DEMANDED |
| Plaintiff | : | |
| | : | |
| vs. | : | (Electronically filed) |
| | : | |
| ADAMS AND ASSOCIATES, INC.  : | | |
| 10395 Double R Blvd. | : | Case No: |
| Reno, NV 89521, | : | |
| | : | |
| Defendant | : | |

## COMPLAINT

The Plaintiff, Dan W. Roeder, by and through his attorneys, Koff, Mangan, Vullo, & Gartley, P.C., hereby complains of the Defendant, Adams and Associates, Inc., as follows:

## I. JURISDICTION AND VENUE

1.     Plaintiff invokes the jurisdiction of this Court pursuant to the provisions of 28 U.S.C. § 1331 and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA").

2.     Plaintiff also invokes the supplemental jurisdiction of this Court over Plaintiff's state claims against Defendant pursuant to 28 U.S.C. § 1367, in that the state law claims form part of the same case or controversy.

3.     Venue is proper in this judicial district because a substantial part of the events and omissions giving rise to the claim occurred in this district and because the Defendant conducted and conducts business in this judicial district.

4.      Plaintiff has exhausted all administrative prerequisites to the filing of this action by filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC).

## II. PARTIES

5.      The Plaintiff, Dan W. Roeder, is an adult individual who currently resides at 8 Kline Road, Orangeville, Pennsylvania 17859.

6.      The Defendant, Adams and Associates, Inc. ("Adams"), has been and is now a Nevada corporation with a principal place of business located at 10395 Double R Blvd., Reno, NV 89521, and at all relevant times had, and does now have, at least fifteen or more employees.

7.      Defendant Adams is a private sector business entity involved in the U.S. Department of Labor's Job Corps Program, providing residential-based academic and vocational training services to students aged 16 to 24.

8.      At all times material to the Plaintiff's claims, Defendant Adams held a contract with and operated the Red Rock Job Corps Center in Lopez, Pennsylvania (hereafter "RR Center"), as part of the federal Job Corps Program.

9.      At all relevant times, Defendant Adams has been and is an employer within the meaning of the provisions of the ADA and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA").

2

10.     At all relevant times, Defendant Adams acted through its agents, employees and representatives, who acted within the scope of their employment and/or agency relationship.

### III.  FACTUAL BACKGROUND

11.     Plaintiff was employed by Defendant Adams as a Security Associate at the RR Center since 2014.  His job included manning RR Center's Welcome Center gate (the "Gate"), which consisted of a rope gate, to admit appropriate RR Center personnel, vehicles, visitors and guests to the RR Center during the 11:30 p.m. to 8:30 a.m. shift.

12.     Prior to his employment with Adams, Plaintiff was diagnosed with Type 2 diabetes and continued to have that medical condition during his employment with Adams.

13.     Defendant Adams' employees, including Adams' Wellness Director, Janine Flourshak, and the RR Center's Human Resources Manager, had knowledge of Plaintiff's diagnosis of diabetes.

14.     Despite his medical condition, Plaintiff was able to carry out his job duties and perform the essential functions of his job as a Security Associate throughout the term of his employment with Defendant Adams.

15.     At all times relevant hereto, Plaintiff was and has been a qualified individual with a disability under the ADA and the PHRA.

16.     For the most part, it was Plaintiff's experience while working for Adams that the RR Center was very short staffed during his shift, so much so that he was unable to

take the meal breaks to which he was entitled for approximately the first year and a half of his employment.

17.     Thereafter, Defendant Adams' management suggested that he take his breaks away from his post at the Gate, and instead in the office of his direct supervisor, Mark McFaul.

18.     Mr. McFaul's office was a distance from the Gate where Plaintiff worked and he could not see the Gate from that office. Plaintiff was therefore fearful that if he was away from his post during his shift, even for the breaks to which he was entitled, and somebody approached the Gate in order to enter the RR Center, he would be sanctioned because there would be no one there to allow that person access while he was away on break.

19.     On June 13, 2016, the RR Center's Shift Manager, Matt Karchner, covered Plaintiff's lunch break from 1:00 a.m. to 2:00 a.m. However, there was no one available to cover his post after that break, in the event of emergency, including the period from 4:30 a.m. to 5:00 a.m.

20.     Sometime between 4:30 and 5:00 a.m. on June 13, 2016, while working his shift at his post at the Gate, Plaintiff had a single, isolated incident of very low blood sugar, which caused him to be ill for a short period of time.  At this time, Plaintiff became nauseous and dizzy, began perspiring, had double vision and felt very sick.  However, Plaintiff was able to recognize this as a hypoglycemic episode resulting from his diabetic condition and remedied the situation on his own, since he had no available replacement at the time.   He completed the remainder of his shift without incident.

4

21.     Plaintiff believes and avers that at approximately 4:43 a.m., one of his co-workers, Rashad Payne, arrived at the Gate to gain admission to the RR Center, in order to begin his work day.

22.     Mr. Payne was unaware of Plaintiff's hypoglycemic episode when he approached him at the Gate, at which time Plaintiff was sitting at his desk fully upright, with his eyes closed. Plaintiff's eyes were closed for a short time in order to quell his dizziness and lightheadedness.  Nevertheless, Plaintiff recognized Mr. Payne, got up from his desk, went outside, unfastened the rope, and waved him through the Gate.

23.     Shortly thereafter, two more of Plaintiff's co-workers, Steve Werner and Gary Lupinski, appeared separately at the Gate, also seeking admission to the RR Center. Both gentlemen commented on Plaintiff's pale appearance, told him that he "looked sick", and had brief conversations with Plaintiff about how he "was doing" that day.

24.     Since Plaintiff continued to feel better as his shift went on, he was able to complete his shift and left work at his normal quit time of 8:30 a.m.

25.     The next day, Plaintiff's supervisor, Art Gramps, requested an explanation of the June 13th incident and Plaintiff explained what had happened.

26.     Despite Plaintiff's explanation of the June 13, 2016 incident, a member of Defendant's Human Resources staff, Elizabeth McSweyn, phoned Plaintiff on June 15th and terminated his employment, allegedly for unauthorized sleeping on the job.

27.     During this call, Ms. McSweyn accused Plaintiff of "nodding off" on the job, in violation of Defendant's policy. Plaintiff denied that he had nodded off and explained

to her that his blood glucose level had suddenly "gone low" but that he had taken care of it.

28.     Plaintiff then offered to provide to Ms. McSweyn a photo of the low reading on his glucose meter, but Ms. McSweyn refused to accept it.

29.     Plaintiff was terminated without Defendant Adams making any effort to engage in the interactive process to determine whether he required reasonable accommodation for his disability, and without making any such accommodation.

30.     Plaintiff believes and avers that Defendant Adams terminated his employment and refused to provide reasonable accommodation to him because of his disability, and based on the Defendant's unjustified perception that he would not be able to perform the essential functions of his job in the future.

31.     Plaintiff consulted with his medical provider after the June 13, 2016 incident and received additional dietary instructions and a reduction in his medication, in order to prevent such incidents in the future.

32.     Because of Defendant's unlawful actions, Plaintiff lost not only his job, but also his health insurance coverage, which was essential to him, given his medical condition.

## IV.  DEFENDANT ADAMS' BREACH OF ARBITRATION AGREEMENT

33.     On August 14, 2017, Plaintiff requested from the EEOC a Notice of Right to Sue, which Notice was received by Plaintiff's counsel on or about August 16, 2017.

34.     In an Employment Agreement with Defendant Adams dated January 1, 2016 (the "Agreement"), relevant portions of which are attached hereto and marked as

Exhibit "A", employment-related disputes are to be resolved by arbitration under the procedures of the American Arbitration Association (the "AAA").   See Exhibit "A" Paragraph 3.

35.   The Agreement also states that Plaintiff is to pay the lesser of $150.00 or the filing fee if his claims were filed in this Court ($400.00), with the understanding that Defendant would pay "the entire Arbitrator's fees and expenses, in addition to other expenses of the arbitration approved by the arbitrator, pending the resolution of the arbitration." See Exhibit "A" Paragraph 3.

36.   On or about November 1, 2017, Plaintiff filed his timely Demand for Arbitration pursuant to Rule 4 of the AAA's Employment Arbitration Rules ("Plaintiff's Demand"), and also submitted the $150.00 filing fee, which was Plaintiff's portion of the AAA filing fee, as provided for in the arbitration clause of the Agreement.  A copy of the Demand is attached hereto as Exhibit "B".

37.   Defendant's counsel acknowledged receipt of Plaintiff's Demand by email on or about December 5, 2017, but requested that the arbitration should take place in Nevada, rather than Pennsylvania.  A copy of said email is attached hereto as Exhibit "C".

38.   In his Demand, Plaintiff requested that the hearing locale be Luzerne County, Pennsylvania inasmuch as the unlawful actions took place in Pennsylvania; Plaintiff resides in Pennsylvania; the Red Rock Center where Plaintiff was employed is located in Pennsylvania; presumably most, if not all, of the witnesses are located in Pennsylvania; and Plaintiff lacks the funds necessary to pay for travel and lodging expenses in Nevada.

39.     In any event, under AAA Employment Arbitration Rules, if the parties disagree as to the locale of the arbitration, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator, after his/her appointment, to make a final determination on the locale.

40.     Over the course of the next several weeks, Defendant Adams refused to submit its portion of the AAA filing fee in the amount of $2,050.00.

41.     By letter dated November 4, 2017, a copy of which is attached hereto as Exhibit "D", the AAA advised the parties that Defendant Adams' portion of the filing fee was $2,050.00 and stated that payment should be submitted by November 17, 2017.

42.     Defendant Adams failed to make payment of the required AAA filing fee and by letter dated December 12, 2017, a copy of which is attached hereto as Exhibit "E", the AAA advised the parties that Defendant Adams had not yet submitted payment of the filing fee of $2,050.00 and stated that payment should be submitted by December 21, 2017.

43.     Defendant Adams failed to make payment of the required AAA filing fee and by letter dated December 28, 2017, a copy of which is attached hereto as Exhibit "F", the AAA advised the parties that Defendant Adams had not yet submitted payment of the filing fee of $2,050.00 and stated that payment should be submitted by January 4, 2018.

44.     Despite these three requests for payment, Defendant Adams failed to pay its portion of the AAA filing fee and by letter of January 9, 2018, a copy of which is attached hereto as Exhibit "G", the AAA advised the parties that the Plaintiff, if he desired, could pay the outstanding $2,050.00 and seek recovery through the award of the

8

arbitrator; however, if Plaintiff did so and if Defendant refused to participate in the arbitration, Plaintiff might be responsible for arbitrator compensation.

45.    The AAA's January 9, 2018 letter confirms that Plaintiff was not obligated to pay Defendant Adams' portion of the fee and that Plaintiff had complied with the AAA Employment Rules' filing requirements.

46.    Because of the actions of Defendant Adams, including the termination of Plaintiff's employment, Plaintiff has been unable to find steady employment since June 15, 2016.

47.    Plaintiff does not have the financial means to bear the cost of the AAA filing fee of $2,050.00 or the costs of the arbitrator's compensation, which, under the Agreement with Defendant Adams, is also the responsibility of Defendant Adams pending the resolution of the arbitration.

48.    As a result of Defendant's failure to remit its portion of the AAA filing fee, and the Plaintiff's inability to cover this fee, the AAA ceased its administration of this dispute, as reflected in the AAA letter of January 12, 2018 attached hereto as Exhibit "H".

49.    Defendant's refusal to pay its portion of the AAA filing fee or otherwise submit to arbitration has delayed the prosecution of Plaintiff's claims by almost two months.

50.    Given the foregoing, Defendant Adams has breached the agreement to arbitrate employment disputes with Plaintiff, rendering that agreement unenforceable and allowing for Plaintiff's claims to proceed in this Court.

51.     Given the foregoing, Defendant Adams has waived any right to have Plaintiff's claims be subject to arbitration.

## FIRST CAUSE OF ACTION

## AMERICANS WITH DISABILITIES ACT

52.     Plaintiff incorporates herein by reference the averments of Paragraphs 1 through 51 above.

53.     At all times material hereto, Plaintiff suffered from diabetes, a condition that substantially affected major life activities of the Plaintiff.

54.     At all times material hereto, Plaintiff was a qualified individual with a disability within the meaning of the provisions of the ADA.

55.     Defendant Adams, through its agents, employees and representatives acting within the scope of their employment, engaged in unlawful practices in violation of the ADA, including the failure to engage in the interactive process with Plaintiff, the failure to make reasonable accommodation for Plaintiff and the termination of Plaintiff because of his known and/or perceived health problems, his record of impairment, and/or his need for reasonable accommodation.

56.     As a result of the improper and unlawful conduct of Defendant Adams, as aforesaid, Plaintiff has suffered and incurred damages, including lost wages, loss of employment opportunities, lost benefits, inconvenience, humiliation, embarrassment and emotional pain, distress and anguish, and he will continue to suffer and incur damages into the future.

57.    The unlawful employment practices complained of were willful, intentional and outrageous, and engaged in with an extreme indifference to the rights of Plaintiff, such that an award of punitive damages is warranted.

58.    As a result of Defendant Adams' actions as aforesaid, Plaintiff has also incurred attorneys' fees and costs, and will continue to incur them in this lawsuit.

WHEREFORE, Plaintiff, Dan W. Roeder, respectfully requests that judgment be entered in his favor and against Defendant, Adams and Associates, Inc., and that this Honorable Court:

(a)    Order Defendant to institute and carry out an effective policy against unlawful discrimination;

(b)    Order Defendant to compensate Plaintiff and make him whole for all past lost earnings and benefits, together with prejudgment interest, in an amount to be proved at trial;

(c)    Order Defendant to immediately reinstate Plaintiff to his former position of employment with Defendant, or in the event that reinstatement is not available, to compensate Plaintiff for all future lost earnings and benefits, in an amount to be proved at trial;

(d)    Order Defendant to compensate Plaintiff for other pecuniary losses, including but not limited to costs incurred for health insurance premiums and damages associated with loss of medical insurance;

(e)     Order Defendant to pay Plaintiff compensatory damages, including damages for inconvenience, humiliation, embarrassment, emotional pain, distress and anguish;

(f)     Order Defendant to pay Plaintiff punitive damages;

(g)     Order Defendant to pay Plaintiff's reasonable attorneys' fees and costs incurred in this action; and

(h)     Grant such other legal or equitable relief as the Court deems necessary and proper.

## SECOND CAUSE OF ACTION

## PENNSYLVANIA HUMAN RELATIONS ACT

59.     Plaintiff incorporates herein by reference the averments of Paragraphs 1 through 58 above.

60.     At all times material hereto, Plaintiff suffered from diabetes, a condition that substantially affected major life activities.

61.     At all times material hereto, Plaintiff had a non-job related disability within the meaning of the provisions of the PHRA.

62.     Defendant Adams, through its agents, employees and representatives acting within the scope of their employment, engaged in unlawful practices in violation of the PHRA, including the failure to engage in the interactive process with Plaintiff, the failure to make reasonable accommodation for Plaintiff and the termination of Plaintiff because of his known and/or perceived health problems, his record of impairment, and/or his need for reasonable accommodation.

63.     As a result of the improper and unlawful conduct of Defendant Adams, as aforesaid, Plaintiff has suffered and incurred damages, including lost wages, loss of employment opportunities, lost benefits, inconvenience, humiliation, embarrassment and emotional pain, distress and anguish, and he will continue to suffer and incur damages into the future.

64.     As a result of Defendant Adams' actions as aforesaid, Plaintiff has also incurred attorneys' fees and costs, and will continue to incur them in this lawsuit.

WHEREFORE, Plaintiff, Dan W. Roeder, respectfully requests that judgment be entered in his favor and against Defendant, Adams and Associates, Inc., and that this Honorable Court:

(a)     Order Defendant to institute and carry out an effective policy against unlawful discrimination;

(b)     Order Defendant to compensate Plaintiff and make him whole for all past lost earnings and benefits, together with prejudgment interest, in an amount to be proved at trial;

(c)     Order Defendant to immediately reinstate Plaintiff to his former position of employment with Defendant, or in the event that reinstatement is not available, to compensate Plaintiff for all future lost earnings and benefits, in an amount to be proved at trial;

(d)     Order Defendant to compensate Plaintiff for other pecuniary losses, including but not limited to costs incurred for health insurance premiums and damages associated with loss of medical insurance;

13

(e)     Order Defendant to pay Plaintiff compensatory damages, including damages for inconvenience, humiliation, embarrassment, emotional pain, distress and anguish;

(f)     Order Defendant to pay Plaintiff's reasonable attorneys' fees and costs incurred in this action; and

(g)     Grant such other legal or equitable relief as the Court deems necessary and proper.

## JURY TRIAL DEMANDED

The Plaintiff, Dan W. Roeder, requests a trial by jury of each issue triable as of right by a jury.

KOFF, MANGAN, VULLO & GARTLEY
P.C.

BY:     /c/ Cynthia R. Vullo
        Cynthia R. Vullo, Esq.
        ID No: 45720
        179 S. Wyoming Avenue
        Kingston, PA 18704
        (570) 718-1700
        cvullo@kmvglaw.com
        Attorney for Plaintiff, Dan W. Roeder

W:\Cindy\Roeder Dan\Complaint.Docx

14